**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MECCA ABNEY,**<br><br>Plaintiff,<br><br>v.<br><br>**SOLIDARITY CENTER**<br><br>Defendant. | Case No. 25-cv-3660 (CRC) |

**MEMORANDUM OPINION**

Mecca Abney, an African American woman, alleges experiencing various incidents of sexual harassment, racial discrimination, and retaliation while working at the Solidarity Center, an international labor-rights organization based in Washington, D.C. In 2021, Ms. Abney filed a charge of discrimination with the D.C. Office of Human Rights ("OHR") and worked her way through the District's administrative process until OHR dismissed her complaint for lack of jurisdiction. OHR reaffirmed that decision in 2025, when it denied her request to reopen her case. Abney then filed suit in D.C. Superior Court, alleging violations of Title VII and the D.C. Human Rights Act ("DCHRA"). Solidarity Center removed the case to federal court. The Center subsequently filed a motion to dismiss the complaint for a failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

The Court will grant the Center's motion in part, dismissing the Title VII claims on intertwined failure-to-exhaust and untimeliness grounds. Because the remainder of Abney's judicial complaint raises only state-law claims, the Court will further exercise its discretion to remand the case to D.C. Superior Court, pursuant to 28 U.S.C. § 1367(c).

## I. Background

### A. Factual Background[1]

Mecca Abney previously worked for a global worker's rights nonprofit called the Solidarity Center. As of 2019, she served as a Country Program Director in the Center's East and Horn of Africa regional program. Compl., ECF No. 1-2, at 7. Abney alleges that, in the spring and summer of 2019, supervisor Hanah Mohamud sent her several inappropriate messages and subjected her to unwanted romantic advances. Id.; see also OHR Denial of Case Reopening, ECF No. 1-2, at 38 ("OHR Denial"); Mot. to Dismiss, Exs. 1, 2 (Abney's original and amended charges of discrimination). According to Abney, Mr. Mohamud "often mentioned that employees had affairs with one another," sent her text messages with love songs, and informed her on different occasions that he was not with his wife or that he would be at Abney's hotel for dinner and up late. Mot. to Dismiss, Exs. 1, 2. Abney avers that she did not accept his advances, though it is not entirely clear whether she "did not respond" to or actively "rejected" them. Compare Mot. to Dismiss, Ex. 2 ("I did not respond to Mr. Mohamud's advances towards me."), with Compl., ECF No. 1-2, at 7 ("Plaintiff rejected Mohamud's sexual advances[.]").

Fast forward roughly one year. On May 22, 2020, Abney "received an email from Human Resources stating that [she] would be demoted to a different position," titled "Senior Migration Specialist." Mot. to Dismiss, Ex. 2. The change in position took effect on July 1,

[1] The Court takes the facts in this background section from Abney's complaint, the documents attached to her complaint, and her original and amended charges of discrimination filed with OHR, which are attached as exhibits to Solidarity Center's motion to dismiss. Both Abney's complaint exhibits and her OHR charges are "referred to in the complaint" and are "central to" her claims for relief, so they may be "considered without converting [Solidarity Center's] motion to dismiss into one for summary judgment." Solomon v. Off. of Architect of the Capitol, 539 F. Supp. 2d 347, 349–50 (D.D.C. 2008) (cleaned up). The Court takes no position on the underlying merits of Abney's allegations.

2020. Compl., ECF No. 1-2, at 8. There is some tension between Abney's amended charge of discrimination filed with OHR, which suggests that she understood in May that she would be demoted, see Mot. to Dismiss, Exs. 1, 2, and her judicial complaint, which alleges that she "did not receive a job description for this reassignment and later realized the change was a demotion, resulting in a reduction of pay, benefits, and responsibilities" (though it remains unclear when exactly she came to this "realization"), see Compl., ECF No. 1-2, at 8.

Abney's complaint further alleges that in October 2020, she "discovered that she had been denied the contractual step increase owed to staff in her prior position under the Collective Bargaining Agreement." Id. Also in October, she contacted the Solidarity Center's Employee Assistance Program ("EAP"), "seeking urgent mental health referrals, citing continued harassment, retaliation, and exclusion." Id. Abney recounts that that fall, she was "excluded from correspondence" on which she asserts she should have been included by virtue of her union role and staff position. Id. And finally, in January 2021, Mr. Mohamud allegedly "circulated updates on behalf of" Solidarity Center's "Management Task Force on Equity," which "allowed him to continue influencing equity processes." Id. Abney characterizes these incidents as "part of a continuing pattern of discriminatory and retaliatory treatment directed at Plaintiff because of her race, sex, and protected activity[.]" Id.

B. Procedural Background

Abney dual-filed an initial complaint of discrimination with OHR and the Equal Employment Opportunity Commission ("EEOC") on July 1, 2021. A few weeks later, OHR conducted an intake interview with her. OHR Denial, ECF No. 1-2, at 38. Abney apparently clarified during her interview "that she learned of her demotion in May 2020, although she did not start the new position until July 1, 2020[.]" Id.

Abney perfected her charge of discrimination on September 14; the charge did not mention any event that occurred on or after July 1, 2020, though she did check a box on the charge form indicating that the discriminatory conduct was a "continuing action." Mot. to Dismiss, Ex. 1. OHR served a Notice of Charge of Discrimination on the parties, and a mediation was held in January 2022, though the parties could not reach a settlement. OHR Denial, ECF No. 1-2, at 39. OHR proceeded with its investigation. According to a subsequent write-up of events by that agency, Solidarity Center filed an "untimely Motion to Dismiss proceedings" on the basis that Abney's complaint did not allege any discriminatory incidents that occurred within the statute of limitations. Id. And in her opposition to that motion, Abney described the additional discriminatory acts that had transpired in the fall and winter of 2020–21, including her exclusion from office communications. Id. at 39–40.

On October 31, 2022, Abney amended her charge of discrimination to add sex as a basis for the alleged discrimination against her. See Mot. to Dismiss, Ex. 2. However, her amended charge of discrimination still did not specify any conduct that occurred after July 1, 2020. Id. Following further investigation, OHR issued an administrative dismissal on December 12, 2024, finding that it lacked jurisdiction over Abney's claims because they were untimely filed. OHR Denial, ECF No. 1-2, at 40–41. Abney subsequently requested that OHR reopen her file, reiterating the events that had transpired after July 1, 2020. Id. at 41. OHR denied that request in July of last year, again finding that it lacked jurisdiction over her complaint because her latest allegations of discrimination were untimely. Id. at 42–44.

Abney filed a *pro se* lawsuit in D.C. Superior Court on August 22, 2025, asserting that she had experienced race discrimination, sex discrimination, and unlawful retaliation in violation of Title VII and the DCHRA. Solidarity Center removed this case to federal court within thirty

days of its receipt of the initial pleading and promptly moved to dismiss Abney's complaint under Fed. R. Civ. P. 12(b)(6). With briefing complete, the motion is ripe for adjudication.

## II. Legal Standard

To survive dismissal on a Rule 12(b)(6) challenge, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint is plausible when its factual content "allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." Id. at 678. Title VII exhaustion is not jurisdictional, so a motion to dismiss based on a "failure to exhaust administrative remedies [is] properly addressed as [a] motion[] to dismiss for failure to state a claim"—meaning, too, that the "[t]he defendant bears the burden of proving that the plaintiff failed to exhaust . . . by a preponderance of the evidence." Scott v. Dist. Hosp. Partners, L.P., 60 F. Supp. 3d 156, 161 (D.D.C. 2014) (Cooper, J.).

The Court must make every reasonable inference in the plaintiff's favor at this stage, considering the alleged facts, "documents attached . . . or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." Gustave–Schmidt v. Chao, 226 F. Supp. 2d 191, 196 (D.D.C. 2002). "Where a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment." Solomon v. Off. of Architect of the Capitol, 539 F. Supp. 2d 347, 349–50 (D.D.C. 2008) (cleaned up).

The pleadings of *pro se* plaintiffs are to be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation omitted). Courts must consider "all [of a *pro se* litigant's] filings, including

filings responsive to a motion to dismiss," when evaluating a motion to dismiss. Ho v. Garland, 106 F.4th 47, 50 (D.C. Cir. 2024); see also Naz v. Wright, 177 F.4th 1242, 1246 (D.C. Cir. 2026). Although a *pro se* complaint is not held to the same standard as one penned by a licensed attorney, it must still satisfy the Rule 12(b)(6) standard. See, e.g., Atherton v. DC Office of the Mayor, 567 F.3d 672, 681–82 (D.C. Cir. 2009).

## III. Analysis

Without opining on the underlying merits of Abney's claim, the Court concludes that her Title VII claims are doomed by an interrelated exhaustion and timeliness problem. Absent viable federal claims, her only surviving claims implicate the District of Columbia's civil rights statute, the DCHRA. The Court will exercise its discretion to remand the remainder of this case to the D.C. Superior Court for adjudication of the non-federal civil rights claims.

### A. Title VII Claims

Abney asserts three claims under Title VII:

- race discrimination, on account of her "exclusion from Black Staff Caucus meetings, denial of pay increases, and exclusion from leadership opportunities";
- sex discrimination based on Mohamud's "repeated sexual harassment and advances" and Abney's resulting "demot[ion], exclu[sion] from key communications, and strip[ping] of professional responsibilities"; and
- retaliation based on her rejection of Mohamud's advances and attempts to "rais[e] concerns of discrimination" and "seek[] support for the hostile work environment," which she alleges led to her demotion, exclusion from meetings and union functions, denial of a pay increase, and continued involvement of her alleged harasser in "equity processes."

Compl., ECF No. 1-2, at 8–9.

A Title VII plaintiff must exhaust administrative remedies by filing a charge of discrimination with the EEOC or a state or local equal employment agency before filing suit in court. 42 U.S.C. § 2000e-5(e)(1). When the plaintiff has initially "instituted proceedings" with a

cooperating non-federal agency, she must file her charge "within three hundred days after the alleged unlawful employment practice occurred." Id.

According to binding Supreme Court precedent, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Nat'l Ry. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). "Each discrete discriminatory act starts a new clock for filing charges alleging that act," id., and an employee "must exhaust administrative remedies for each discrete claim," Albert v. Perdue, No. 17-cv-1572 (JEB), 2019 WL 4575526, at *8 (D.D.C. Sep. 20, 2019). "The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim." Morgan, 536 U.S. at 113. In addition, a claim based on the allegation of some kind of discriminatory pattern or practice—usually, a hostile environment claim, which by its "very nature involves repeated conduct"—is timely exhausted so long as a charge is filed within 300 days "of any act that is part of" the ongoing pattern. Id. at 115–20; see also Greer v. Bd. of Trustees of Univ. of Dist. of Columbia, 113 F. Supp. 3d 297, 308 (D.D.C. 2015) ("The law [of exhaustion] applies differently when the plaintiff is alleging the existence of a discriminatory pattern and practice.").

Here, Abney's complaint and the content of her administrative complaint create an interrelated timeliness and exhaustion problem. She filed her complaint with OHR on July 1, 2021, which means that any discrete discriminatory acts that occurred *before* September 4, 2020 are not actionable under Title VII. However, her initial complaint, charge of discrimination, and amended charge exclusively reference events that occurred prior to that date, including

Mohamud's unwelcome advances and her demotion (whether measured from the date that she heard about the position change on May 22, 2020 or the actual date of the position change on July 1, 2020). Assuming that those events were discrete acts of discrimination (more on that in a moment), the alleged harassment and subsequent demotion are not actionable under Title VII.

As to the events that Abney alleges occurred *after* September 2020—which include the "denial" of her pay increases, exclusion from meetings and correspondence, and purported "retaliation" after seeking assistance with the EAP—they might have been timely had Abney mentioned them in the July 1, 2021 complaint. But those actions were raised neither in Abney's OHR complaint, nor in her original and amended charges of discrimination. According to the administrative decision Abney has appended to her complaint, the earliest she can be said to have flagged these events for OHR was in an opposition brief filed in August of 2022. And as OHR observed, by that time, "even the most recent allegation concerning the January 2021 email was untimely." OHR Denial, ECF No. 1-2, at 43.

To a layperson, this strict adherence to procedural guardrails may seem pedantic. But the Supreme Court has confirmed that Title VII's charge-filing provision is a "mandatory claim-processing rule" that, when duly raised by an opponent, must be obeyed unless some delineated exception applies. Fort Bend Cty v. Davis, 587 U.S. 541, 552 (2019). Exhaustion is "not a mere technicality, but serves the important purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision." Rahimi v. Weinstein, 271 F. Supp. 3d 98, 102 (D.D.C. 2017) (cleaned up). The Court is not at liberty to ignore the lapsed deadlines and non-exhaustion that plagues Abney's Title VII claims here.

Construing her opposition brief liberally given her *pro se* status, Abney's principal rejoinder is that her claims were timely filed and exhausted because she was subjected to a

hostile work environment, and the conduct stretching from July 2020 through January 2021 constituted a "continuing violation." Opp'n at 2.

Bracketing the additional problem that Abney's complaint does not seem to articulate a standalone hostile work environment claim, the Court is not persuaded by her response. As suggested above, "administrative exhaustion applies differently to 'continuing violations' than to 'discrete' violations." Guerrero v. Vilsack, 134 F. Supp. 3d 411, 429 (D.D.C. 2015). The continuing violation doctrine "is almost exclusively applied to hostile work environment claims under Title VII," and "is implicated by conduct that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period, typically because it is only its cumulative impact . . . that reveals its illegality." Brinkley v. Dist. of Columbia, No. 21-cv-1537 (RBW), 2026 WL 850679, at *26–27 (D.D.C. Mar. 27, 2026) (cleaned up). Thus, when an employee is subjected to a pattern of conduct that is best understood as a single unlawful employment practice, and one act in that pattern falls within the limitations period, the doctrine permits courts to consider other acts that are technically outside the applicable timeframe.

Viewing the well-pled allegations in the light most favorable to Abney, the Court still concludes that her Title VII claims are untimely and not fully exhausted. Even if the sexual harassment that she allegedly experienced were related to her demotion roughly a year later and her subsequent exclusion from various workplace activities and email threads a few months after that (which the Court assumes here without deciding), these related events do not strike the Court as the kind whose "cumulative impact . . . reveals [their] illegality." Id. (cleaned up). If the allegations are accurate, Abney has perhaps experienced several adverse employment actions—for instance, harassment by a supervisor, a demotion, and a denial of a pay bump she thought

was due—but not one continuous Title VII injustice. Again, "[e]ach discrete discriminatory act starts a new clock for filing [and exhausting] charges alleging that act." Morgan, 536 U.S. at 113. At least under the Title VII timetable, each of those clocks had run by the time Abney sought to litigate her grievances.

In sum, the Court cannot consider Abney's Title VII race discrimination, sex discrimination, and retaliation claims because they were not timely or exhausted by the time she filed her complaint in this case. Although Title VII plaintiffs enjoy some flexibility on timeliness and exhaustion when it comes to patterns of discriminatory conduct, the continuing-violation doctrine is "not . . . an open sesame to recovery for time-barred violations." Baird v. Gotbaum, 662 F.3d 1246, 1251 (D.C. Cir. 2011).

B. State Law Claims

Solidarity Center removed this case from D.C. Superior Court to federal court in light of the Title VII claims over which this Court could exercise federal question jurisdiction. See Not. of Removal ¶¶ 5–6. With Abney's Title VII claims now off the table, only her DCHRA claims remain. When a case is removed from state to federal district court, the district court may exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). But district courts "may decline to exercise supplemental jurisdiction over" a state law claim if, among other things, "the district court has dismissed all claims over which it has original jurisdiction[.]" Id. § 1367(c)(3). "Whether to retain jurisdiction over pendent state and common law claims after the dismissal of the federal claims is 'a matter left to the sound discretion of the district court[.]'" Shekoyan v.

Sibley Intern., 409 F.3d 414, 423 (D.C. Cir. 2005) (quoting Edmonson & Gallagher v. Alban Towers Tenants Ass'n, 48 F.3d 1260, 1265–66 (D.C. Cir. 1995)).

It is well-established that federal courts should avoid "[n]eedless[ly]" rendering "decisions of state law . . . both as a matter of comity and to promote justice between the parties." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966). "In the usual case in which all federal-law claims are dismissed before trial, the balance of factors to be considered under pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Shekoyan, 409 F.3d at 424 (citation omitted). This is such a "usual case." Economy and comity concerns counsel in favor of remand, especially since the DCHRA lacks an exhaustion requirement akin to the one that warranted dismissal of Abney's Title VII claims here. Cf. Ndondji v. InterPark, Inc., 786 F. Supp. 2d 263, 285 (D.D.C. 2011). Rather than plumb further depths of this case to determine whether Abney's claims are viable under state law, the Court will exercise its discretion to remand the remainder of the case to D.C. Superior Court for further adjudication.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss in part, dismisses Plaintiff's Title VII claims, and remands the case to D.C. Superior Court. A separate Order accompanies this Memorandum Opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: August 12, 2026